**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRCT OF FLORIDA**
**TAMPA DIVISION**

ROBERT CHEESMAN,

   Plaintiff,                                    CASE NO.:

-VS-

SUNTRUST BANK,

   Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, ROBERT CHEESMAN, by and through the undersigned counsel, and sues Defendant, SUNTRUST BANK, (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like defendant from invading American citizen's privacy and prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to

1

rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings

presumably intended to give telephone subscribers another option: telling the autodialers

to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir.

2014).

4.      According to the Federal Communications Commission (FCC),

"Unwanted calls and texts are the number one complaint to the FCC. There are thousands

of complaints to the FCC every month on both telemarketing and robocalls. The FCC

received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal*

*to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless*

*Phones*,      Federal      Communications      Commission,      (May      27,      2015),

http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-

333676A1.pdf.

## JURISDICTION AND VENUE

5.      This is an action for damages exceeding Seventy-Five Thousand Dollars

($75,000.00) exclusive of attorney fees and costs.

6.      Jurisdiction and venue for purposes of this action are appropriate and

conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves

violations of the TCPA.

7.      Subject matter jurisdiction, federal question jurisdiction, for purposes of

this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the

district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States; and this action involves violations of

47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8.      The alleged violations described herein occurred in Pasco County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9.      Plaintiff is a natural person, and citizen of the State of Florida, residing in the city of Land O' Lakes, Pasco County, Florida

10.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11.     Plaintiff is an "alleged debtor."

12.     Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13.     Defendant is a corporation and national association with its principal place of business located at 303 N.E. Peachtree Street, Atlanta Georgia 30308, and which regularly conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee Florida 32301.

14.     The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15.     Defendant is a "creditor" as defined in Florida Statute §559.55(5).

16.     Defendant called Plaintiff on Plaintiff's cellular telephone approximately two-hundred fifty (250) times in an attempt to collect an alleged credit card debt.

17.     Defendant attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

18.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because of the vast number of calls he received and because he heard an extended pause when he answered his phone before a voice came on the line.

19.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (352) ***-6930, and was the called party and recipient of Defendant's calls.

20.     Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (352) ***-6930 in an attempt to collect on a debt.

21.     The auto-dialer calls from Defendant were initiated from phone numbers including but not limited to: (888) 893-1773, and when that number is dialed, an artificial voice answers and says, "Thank you for calling SunTrust Bank."

22.     On several occasions over the last year, Plaintiff instructed Defendant's agent(s) to stop calling his cellular telephone.

23.     In or about May of 2018, Plaintiff answered a call from Defendant to his aforementioned cellular telephone number, met with an extended pause, held the line and was eventually connected to a live representative, and informed that agent/representative of Defendant that he already made a payment, that the calls were harassing and Plaintiff demanded Defendant's agent/representative to stop calling his cellular telephone number.

24.     During the aforementioned call with Defendant's agent/representative in or about May of 2018, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

25.     Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

26.     Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

27.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

28.     Similarly, in or about June of 2018, Plaintiff answered a call from Defendant to his aforementioned cellular telephone number, met with an extended pause, held the line and was eventually connected to a live representative, and informed that agent/representative of Defendant that he was aware of when his payment was due, that

he had previously requested that Defendant stop calling him, and again demanded Defendant's agent/representative to stop calling his cellular telephone number.

29.     Defendant called Plaintiff on Plaintiff's cellular telephone without his express consent approximately two hundred (200) times in an attempt to collect a debt (or as will be determined upon review of Plaintiff's wireless records and/or Defendant's records).

30.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times in the same hour, during one day, and on back to back days, including nights and weekends, with such frequency as can reasonably be expected to harass.

31.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

32.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant, to remove the number.

33.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they wish for the calls to stop.

34.     Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

35.     Defendant has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite being requested to stop.

36.     Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

37.     Defendant's corporate policy provided no means for Plaintiff to have his number removed from Defendant's call list.

38.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

39.     Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

40.      Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

41.     From each and every call placed without consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

42.     From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of his cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

43.     From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

44.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

45.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

46.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

47.     Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular phone and his cellular phone services.

48.     As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, and aggravation.

## COUNT I
### (Violation of the TCPA)

49.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty-eight (48) as if fully set forth herein.

50.     SUNTRUST BANK willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified SUNTRUST BANK that he wished for the calls to stop.

51.     SUNTRUST BANK repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SUNTRUST BANK for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

52.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty-eight (48) as if fully set forth herein.

53.     At all times relevant to this action SUNTRUST BANK  is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

54.     SUNTRUST BANK has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

55.     SUNTRUST BANK has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

56.     SUNTRUST BANK's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SUNTRUST BANK   for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Shaughn C. Hill*
Shaughn C. Hill, Esq.
Morgan & Morgan, Tampa,  P.A.
One Tampa City Center
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 223-5402
shill@forthepeople.com
slauredan@forthepeople.com
Florida Bar #:  105998
*Attorney for Plaintiff*